# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 17CR560 WQH |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| LUIS MAYEA-PULIDO, | |
| Defendant. | |

HAYES, Judge

The matter before the Court is Defendant's Renewal of Motion for Judgment of Acquittal under Fed. R. Crim. P. 29. (ECF No. 58).

## BACKGROUND FACTS

On March 7, 2017, Defendant was charged by information with being a deported alien found in the United States in violation of 8 U.S.C. §1326(a) and (b).

On November 14, 2017, trial commenced. At trial, Defendant presented evidence that his father became a naturalized citizen before he turned eighteen. Defendant argued to the jury that the Government failed to prove alienage because he was a derivative citizen.

At the time of the jury instructions, Defendant proposed an instruction to the jury that stated:

> A child born outside the United States to non-citizen parents automatically becomes a United States citizen if, before he reaches the age of eighteen, all of the following event occur;
> 1. One of the child's parents is a United States citizen, whether by birth

> or naturalization;
> 2. The child becomes a lawful permanent resident;
> 3. The child is in the legal and physical custody of the United States citizen parent.
> A person who meets the above criteria is automatically a citizen of the Unite States regardless of whether a certificate of citizenship has been issued.
> Unless the government proves that all three of the above events did *not* occur, you must find Mr. Mayea not guilty of illegal reentry.

(ECF No. 45 at 11).

The Government opposed the Defendant's instruction on the grounds that 8 U.S.C. § 1432(a)[1] governing derivative citizenship at the time the Defendant turned 18 years old provided that a child was automatically a citizen only if both parents naturalized, or if the parents were legally separated or divorced and the child was living in the physical and legal custody of the naturalized parent. Defendant asserted that it was not necessary for his mother to have naturalized because 8 U.S.C. § 1432 governing derivative citizenship to a child born prior to February 27, 1983 is unconstitutional.

The Court instructed the jury:

> Derivative citizenship is United States citizenship automatically conveyed to a child born outside the United States, through a United States citizen parent or parents, if certain conditions prescribed by law are met.
>
> A child born outside the United States to non-citizen parents automatically becomes a United States citizen if:
>
> 1. The child becomes a Lawful Permanent Resident; and
>
> 2. Before the child reaches the age of eighteen, any one of the following events occurs:
>
> - Both parents become naturalized United States citizens; or
>
> - One parent dies and the other becomes a naturalized United States citizen; or
>
> - The parents of the child legally separate and the parent with legal custody becomes a naturalized United States citizen; or
>
> - If the child was born out of wedlock and the paternity of the child has not been established by legitimation, the mother becomes a naturalized United States citizen

---

[1] Prior to 2001, former §1432 government derivative citizenship.

> A person who satisfies the above criteria is automatically a citizen of the United States regardless of whether a certificate of citizenship has been issued.

(ECF No. 53 at 14-15).

On November 15, 2017, Defendant was found guilty as charged by verdict of the jury.

On January 9, 2018, Defendant filed a renewed Motion for Judgment of Acquittal under Fed. R. Civ. P. 29 on the grounds that "the evidence is insufficient to sustain a conviction." Fed. R. Crim P. 29(a). Defendant asserts that the uncontroverted evidence at trial showed that his father became a naturalized citizen before he turned eighteen and the only factual issue at trial was whether his mother was a naturalized citizen. Defendant asserts that it was legally unnecessary for his mother to naturalize because 8 U.S.C. § 1432(a)(1) is unconstitutional in light of the recent Supreme Court decision in *Sessions v. Morales-Santana,* 137 S.Ct. 1678 (2017). Defendant contends that § 1432 disadvantages marital children by requiring them to have two naturalized parents in order to derive citizenship rather than one naturalized parent as with children of divorced or legally separated parents. Defendant contends that this different treatment violates his equal protection rights as set forth in *Morales-Santana*.

On March 7, 2018, Plaintiff United States filed a response and opposition to the motion for judgment of acquittal. The Government contends that *Morales-Santana* deals exclusively with the constitutionality of citizenship statutes using gender-based criteria. The Government asserts that automatic citizenship under § 1432 is gender neutral and based entirely upon martial-status and the number of living parents. The Government asserts that martial-based criteria do not violate due process and *Morales-Santana* does not retroactively invalidate the now repealed § 1432. Finally, the Government contends that the decision of the Court of Appeals in *Barthelemy v.*

*Ashcroft*, 329 F.3d 1062 (9th Cir. 2003)[2] continues to govern this case.

## ANALYSIS

In relevant part, § 321(a) of the Immigration and Naturalization Act provides:

> A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
>
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C § 1432(a)(repealed).

In 2000, Congress passed the Child Citizenship Act which granted automatic citizenship to a child who has one United States citizen parent, becomes a lawful permanent resident, resides in the legal and physical custody of the United States citizen parent, and was born after February 27, 1983. 8 U.S.C. § 1431(a), *See Hughes v. Ashcroft*, 329 F.3d 752, 760 (9th Cir. 2001). Defendant was born on October 23, 1978 and the repealed provisions of § 1432 apply to determine his right to automatic derivative citizenship.

In *Morales-Santana*, the United States Supreme Court addressed "a gender-based differential in the law governing acquisition of U.S. citizenship by a child born abroad,

---

[2] In *Barthelemy,* the Court of Appeals held that the legal separation requirement of § 1432(a)(3) did not irrationally classify petitioner seeking citizenship based on former martial status of parents and or improperly discriminate on the basis of gender.

when one parent is a U.S. citizen, the other, a citizen of another nation." 137 S.Ct. at 1686. The main rule applicable to married couples in 8 U.S.C. § 1401(a)(7) required a period of physical presence in the United States for the U.S. citizen parent. The requirement initially prescribed was ten years prebirth and was later reduced to five years prebirth. The main rule was applicable to unwed U.S. citizen fathers by §1409(a) but Congress ordered an exception for unwed U.S. citizen mothers in §1409(c) which allowed an unwed mother to transmit her citizenship to a child born abroad if she had lived in the United States for just one year prior to the child's birth.

Morales-Santana was born in the Dominican Republic when his father was twenty days short of meeting the five-year requirement of the physical presence in § 1401(a)(7). Morales-Santana moved to the United States at age 13 and his father accepted parental responsibility. Later facing deportation, Morales-Santana asserted U.S. citizenship based upon the citizenship of his father. Morales-Santana asserted that the equal protection principle implicit in the Fifth Amendment entitled him to citizenship. Morales-Santana asserted gender based discrimination against his U.S.-citizen father who was unwed at the time of his birth and was not accorded the same right an unwed U.S.-citizen mother would have to transmit citizenship to her child. The Supreme Court concluded that Morales-Santana was entitled to assert the legal rights of his father to pass citizenship to his son.

The Supreme Court recognized that "no 'important [governmental] interest' is served by laws grounded, as §1409(a) and (c) are, in the obsolescing view that 'unwed fathers [are] invariably less qualified and entitled than mothers' to take responsibility for nonmarital children." *Id*. at 1692 quoting *Caban v. Mohammed*, 441 U.S. 380, 382 (1979). The Supreme Court applied the heightened scrutiny standard to this gender based statutory scheme and concluded,

> In sum, the Government has advanced no "exceedingly persuasive" justification for § 1409(a) and (c)'s gender-specific residency and age criteria. Those disparate criteria, we hold, cannot withstand inspection under a Constitution that requires the Government to respect the equal dignity and stature of its male and female citizens.

- 5 -

17cr560 WQH

137 S.Ct. at 1698. The Supreme Court invalidated the one-year physical-presence term in § 1409(c) reserved for unwed mothers and prospectively applied the five-year requirement to unwed mothers. In determining the remedy, the Supreme Court stated in part,

> For if § 1409(c)'s one-year dispensation were extended to unwed citizen fathers, would it not be irrational to retain the longer term when the U.S.-citizen parent is married? Disadvantageous treatment of marital children in comparison to nonmarital children is scarcely a purpose one can sensibly attribute to Congress. 25
> FN 25 Distinctions based on parents' marital status, we have said, are subject to the same heightened scrutiny as distinctions based on gender. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

*Id*. at 1700. *See also Lehr v. Robertson,* 463 U.S. 248, 267 (1983) (recognizing that laws treating fathers and mothers differently "may not be constitutionally applied ... where the mother and father are in fact similarly situated with regard to their relationship with the child.")

Congress has nearly plenary power to establish the qualifications for citizenship. U.S. Const. art. I. § 8 ("The Congress shall have Power ... To establish an [sic] uniform Rule of Naturalization"); *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (emphasizing that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens") (internal citations and quotations omitted).

In this case, Defendant's claim to derivative citizenship is governed by repealed § 1432(a)(1) requiring "the naturalization of both parents." In *Barthelemy,* the Court of Appeals addressed the constitutionality of §1432(a)(3) requiring the "naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." 8 U.S.C. §1432(a)(3). Barthelemy argued that the clause impermissibly distinguishes between those children born of parents who never married and those born of parents who at one time were married and then legally separated. The Court of Appeals reviewed the

statutory scheme stating,

> Reading § 321(a) in its entirety, we think that Congress generally intended to provide automatic citizenship to children born abroad of alien parents only after the naturalization of both biological parents. This policy is rational for at least a few reasons, but we need only discuss one rationale here: the protection of parental rights. If United States citizenship were conferred to a child where one parent naturalized, but the other parent remained an alien, the alien's parental rights could be effectively extinguished. *See Fierro v. Reno*, 217 F.3d 1, 6 (1st Cir.2000) (noting that § 321(a) presumably demonstrates the congressional intent to protect children from "separation from the parent having legal custody during the child's minority"); *Wedderburn*, 215 F.3d at 800 ("Both the child and the surviving but non-custodial [alien] parent may have reasons to prefer the child's original citizenship, which may affect obligations such as military service and taxation."). Thus, § 321(a) prevents the naturalizing parent from usurping the parental rights of the alien parent.

*Id.* at 1066. The Court of Appeals concluded that "the legal separation requirement helps protect the parental rights of the alien parent" and is consistent with the statutory scheme. *Id*. The Court of Appeals further concluded that the § 1432(a) makes no sex-based distinction when the petitioner has been legitimated and § 1432(a)(3) "does not discriminate on the basis of sex." *Id*. at 1067.

In this case, repealed §1432(a)(1) requires that a person with two married parents must have both parents naturalize to receive the benefit of automatic derivative citizenship. This marital based requirement is gender neutral and does not discriminate on the basis of sex. The statutory requirement must be upheld "if a facially legitimate and bona fide reason supports the distinction made by the statute." *Barthelemy,* 329 F.3d at 1065 (internal quotation omitted).

In *Morales-Santana*, the Supreme Court addressed a statutory scheme in § 1409(a) and (c) with "differential treatment of unmarried women and men with regard to transmission of citizenship to their children." 137 S.Ct. at 1697-98. The requirement in § 1342(a)(1) for "the naturalization of both parents" does not discriminate on the basis of sex or make a sex-based distinction with regard to the transmission of citizenship. *See also Levy v. U.S. Attorney General*, 882 F.3d 1364, 1367 (11th Cir. 2018)(". . . §1432(a) does not discriminate based on gender."). The Court concludes that the references to martial-based criteria in *Morales-Santana* do not support the

conclusion that repealed statute § 1342(a)(1) must be retroactively invalidated on the grounds that the statute violates Defendant's equal protection rights. The Court concludes that the jury was properly instructed and that the evidence is sufficient to sustain a conviction.

IT IS HEREBY ORDERED that Defendant's Renewal of Motion for Judgment of Acquittal under Fed. R. Crim. P. 29 (ECF No. 58) is denied.

DATED: March 28, 2018

*/s/ William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge